UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


MORRIS AVIATION, LLC, and
MASCARO AVIATION, LLC,                                          PLAINTIFFS

v.                                                    CIVIL ACTION NO. 3:09-CV-644-S

DIAMOND AIRCRAFT INDUSTRIES, INC.,                              DEFENDANT


## MEMORANDUM OPINION

Morris Aviation (a Kentucky corporation) and Mascaro Aviation (a Florida corporation) have

sued Diamond Aircraft Industries (a Canadian corporation) for fraud and violation of state consumer

protection statutes. Each plaintiff purchased a DA42 aircraft (Mascaro in August 2007, Morris in

March 2008) from Premier Aircraft Sales, Inc., an authorized distributor of Diamond airplanes.[1]

These planes were designed for and sold with engines manufactured by Thielert Aircraft Engines

G.m.b.H. ("TAE"), a German firm. Unbeknownst to the plaintiffs, TAE had begun experiencing

financial problems in 2006. In November of that year it came under official investigation in its home

country for attempting to obtain bank loans and stock certificates under false pretenses. Several

months later, German authorities opened a second investigation into fraudulent activities perpetrated

by TAE executives. The end result was TAE falling into a German insolvency proceeding in April

2008, at which all the firm's engine warranties—including those covering the engines that power the

plaintiffs' planes—were declared void. Consequently, the plaintiffs allege, their engines are now

worth substantially less than they were at the time of purchase. In addition, to remain operable the

---

[1] Premier operates various regional offices, one of which is Dominion Aircraft Sales, Inc. Dominion is located
in Virginia but is evidently Premier's distributor of Diamond products in Kentucky.

engines will require significant maintenance expenditures that would have been covered by the warranties if they were still in force.

Plaintiffs assert that Diamond misled them about the state of TAE's finances and the likelihood that their engine warranties would turn out to be worthless. They therefore filed a complaint in this court alleging fraudulent and negligent misrepresentation of those facts, as well as fraud by omission. In addition, Morris claims that Diamond violated the Kentucky Consumer Protection Act, KRS 367.110, et seq., and Mascaro claims violation of the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.201, et seq. Diamond has moved to dismiss the complaint for lack of personal jurisdiction and (failing that) on the basis that it fails to state a cognizable cause of action.[2] We turn first to the jurisdictional arguments.

# I

The plaintiff bears the burden of establishing personal jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (*citing Nationwide Mut'l Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996)). While the district court may hold an evidentiary hearing to determine whether or not jurisdiction exists, it need not do so; in that case the plaintiff "need only make a prima facie showing of jurisdiction," *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996), establishing the necessary facts with "reasonable particularity." *Neogen*, 282 F.3d at 887 (*quoting Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). Without a hearing the court may not "consider facts proffered by the defendant that conflict with those offered by the plaintiff," *id.* (*citing Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212,

---

[2] Subject-matter jurisdiction is proper: the parties are diverse and more than $75,000 is at stake. 28 U.S.C. § 1332.

1214 (6th Cir. 1989)), and "must consider the pleadings and affidavits in a light most favorable to the plaintiff," *Compuserve*, 89 F.3d at 1262 (*citing Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

A federal district court can exercise jurisdiction over any person subject to the jurisdiction of the state in which it sits. *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 148 (6th Cir. 1997). The Due Process Clause imposes constitutional limits on this jurisdiction, and Kentucky's long-arm statute, KRS 454.210, has been interpreted as reaching the outer limits of what federal law allows. *Cummings v. Pitman*, 239 S.W.3d 77, 84 (Ky. 2007). Consequently the statutory requirements have merged into the due process analysis, and the only question regarding personal jurisdiction in Kentucky is whether the Constitution will allow it. *Id.* at 84-85.

In all questions of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may take one of two forms. "General jurisdiction" attaches upon "a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant." *Kerry Steel*, 106 F.3d at 149. If a company has enough contacts with Kentucky, it can be sued here over a product sold in Oklahoma to an Alaskan citizen on the basis of general jurisdiction. Alternatively, "specific jurisdiction" can be premised on as little as a single event or transaction in the forum state, provided the claims at issue "'arise out of or relate to' a defendant's contacts with the forum." *Id.* (*citing Helicopteros Nacionales de Colombia S.A., v. Hall*, 466 U.S. 408, 414-415 & nn.8-10 (1984)).

## A

We first ask whether Kentucky can constitutionally exercise general personal jurisdiction over Diamond. The "general jurisdiction inquiry is dispute blind, the sole focus being on whether there are continuous and systematic contacts between the defendant and the forum."*Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999) (*citing Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414-16 (1984); Mary Twitchell, The Myth of General Jurisdiction, 101 Harv. L. Rev. 610 (1988)). The purpose of this inquiry is to determine whether the forum state has enough of an interest in the defendant corporation itself to force it to submit to the state's authority, because in a general jurisdiction case the state need not have an interest in the specific cause of action alleged. *Id.* The assessment of general jurisdiction considers the defendant's connections with the forum state leading up to the accrual of the cause of action, and not just those contacts related to the case at hand. *See* 4 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.5 (3d ed. 2002). "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (*quoting Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). It is difficult to get into court on the basis of general jurisdiction; leading commentators have described the threshold for general jurisdiction as "very substantial" and "quite rigorous." 4 Wright & Miller, *supra*, at § 1067.5.

There is no step-by-step test for general jurisdiction; the Supreme Court has handed us only the "continuous and systematic contacts" rubric. Accordingly, we must proceed by comparing the contacts in our case to those in other leading precedents. *Helicopteros* is the most prominent. There,

the Court held that the Colombian defendant had not maintained sufficient contact with Texas to allow the state court to exercise general personal jurisdiction over it. 466 U.S. at 418-19. This was true despite several arguably substantial connections with the would-be forum state: the defendant had negotiated a contract (unrelated to the tort action that was before the Court) in Texas; had accepted checks drawn on a Texas bank; had purchased nearly 80% of its fleet of helicopters as well as other spare parts and accessories in Texas; and had sent pilots to Texas for training. *Id.* at 411, 416.

What contacts does Diamond have to Kentucky? There is no allegation that it (for instance) maintains an office in Kentucky, that it is licensed to do business here, that it has a bank account here, or that it directs any of its business operations from the Commonwealth. See *Bird*, 289 F.3d at 873-74 (*citing Helicopteros*, 466 U.S. at 416, 418). Diamond's connection to Kentucky is quite limited. First (and this is the plaintiffs' strongest argument), it has designated an authorized distributor (Premier) and a certified repair center (Don Davis Aviation, Inc., of Henderson, Kentucky) to serve the Kentucky market. This is however a rather tenuous contact, seeing as neither the distributor nor the repair center is actually a part of the Diamond corporate entity (and Premier is not even located in this Commonwealth). It is true that Diamond maintains some sort of contractual relationship with Don Davis Aviation, but a single such contract is hardly "systematic" and compares unfavorably to the *Helicopteros* defendant's significant and repeated purchases in the putative forum state. Second, the FAA's registry reflects at least ten Diamond-manufactured aircraft assigned to Kentucky. (Pl.'s Ex. C.) Again, however, this is not on its own substantial evidence that Diamond has directed its activities to Kentucky: the planes' present owners could have purchased them second-hand or from out of state before bringing them here. There is no evidence or even

allegation regarding the sales themselves—nothing to show that Diamond directed its efforts to Kentucky. Indeed the fact that Diamond maintains various distributors (none of which is located in Kentucky) suggests that it did not itself sell the planes to Kentucky. *Cf. Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992) (finding no general jurisdiction over a manufacturer selling its products to Ohio via distributors). And even if Diamond had itself sold the planes into Kentucky, we are not persuaded that ten planes would constitute "continuous and systematic contacts."

Third, Diamond has communicated with Kentucky residents regarding sales of its products. It sent (in paper form and via e-mail) information regarding a DA42 to Todd House, whose YourJet, Inc. eventually became involved with Morris Aviation. (House Aff. ¶ 4.) But the only communications discussed by the plaintiffs are just those involved in this case and do not necessarily imply any prior dealings in Kentucky on Diamond's part. Fourth, in November 2007 it allegedly directed Jeff Owen to fly a DA 42 to Louisville to demonstrate its features to House and his business partner John Morris. (*Id.* at ¶ 16.) But this is again a single event that does not show "continuous and systematic contacts" with the state. Finally, Diamond maintains a website that contains a testimonial from a Kentucky customer as well as information regarding the firm's authorized Kentucky distributors and repair centers. But "the fact that [the defendant] maintains a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction." *Bird*, 289 F.3d at 874 (*citing Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997)). This was true in *Bird* even though residents of the forum state (Ohio) could transact business directly with the defendant through the website by registering Internet domain names. *Id.* The Sixth Circuit found it "significant that, unlike direct marketing, registrants initiate the contact with" the defendant corporation. *Id.* The website alleged to exist in this case no more "approximates physical presence

within the state's borders" than did the site involved in *Bird*. *Id.* (*quoting Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)). Diamond's website did not even allow customers to initiate business. Because none of Diamond's contacts with Kentucky is especially substantial—let alone "continuous and systematic"—we conclude that the plaintiffs have failed to satisfy their burden of showing that Diamond is subject to Kentucky jurisdiction for adjudication of every claim asserted against it regardless of origin. If personal jurisdiction exists it must be specific.

## B

So now we turn to the question whether Kentucky can exercise personal jurisdiction over Diamond as the result of the actions out of which this case arises. The Sixth Circuit has established a three-pronged test for determining the existence of such jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) (*quoted in Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007)). All three elements must be present; the absence of one will defeat jurisdiction. *Lak, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1303 (6th Cir. 1989).

## 1

We first address the question whether there is specific jurisdiction over Morris's claims. *Southern Machine*'s first factor has been described as the "sine qua non for in personam jurisdiction." *Air Prods.*, 503 F.3d at 550; *S. Mach. Co.*, 401 F.2d at 381-82. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result

of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.* (citations omitted). Importantly, however, "physical presence in a forum state is not required, and the Supreme Court has 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'" *Air Prods.*, 503 F.3d at 551 (*quoting Burger King*, 471 U.S. at 476). "[E]ven a single act by defendant directed toward [the forum state] that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001) (*citing Calder v. Jones*, 465 U.S. 783 (1984)).

Todd House's affidavit highlights two events occurring in Kentucky that could form the basis for specific jurisdiction over Diamond: In November 2007 in Louisville, Jeff Owen flew to Louisville and "continued to tout the security and reliability of the TAE engine warranty to Dr. House and Dr. Morris." (Resp. 28; House Aff. ¶¶ 16-17.) And from January to March 2008, Owen in telephone correspondence with House (who was in Louisville) repeated his insistence on the reliability of the TAE engine warranty. (Resp. 28-29; House Aff. ¶ 19.) The Sixth Circuit has held that acts as apparently insubstantial as "phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." *Neal*, 270 F.3d at 332 (*citing Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999); *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 282 (7th Cir. 1990)). "When the actual content of the communications into the forum gives rise to an

intentional tort action, that alone may constitute purposeful availment." *Id.* Thus assuming that Owen's communications into Kentucky (either in person or over the phone, or both) contained actionable statements, they are a sufficient basis for exercising personal jurisdiction.

The defense argues that at the relevant times Owen was an employee of Premier, not Diamond. Plaintiffs respond that Owen and Premier acted as Diamond's agents, that their actions should be attributed to the defendant, and that personal jurisdiction therefore attaches. While the plaintiffs have not presented any evidence of an actual agency relationship (though such a relationship might yet be proved), there is sufficient support at this stage for a prima facie finding of *apparent* authority. The Kentucky Supreme Court has adopted the definition set out in the Restatement (Second) of Agency § 267: "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such." *Roethke v. Sanger*, 68 S.W.3d 352, 363 (Ky. 2001); *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 257 (Ky. 1985). *See also* Restatement (Third) of Agency § 2.03. This definition can be distilled to two elements: (1) the principal (here, Diamond) must have represented that the putative agent (Owen and/or Premier) had authority to act on its behalf; and (2) the plaintiff must have justifiably relied on the principal's representation.

There is enough evidence to meet this test at this stage. Perhaps most importantly, after Owen joined Premier, Diamond informed House that his account would be handled by the distributor from now on. When he protested, House was informed that he "had no reason for concern and that working with Premier is the same as working directly with Diamond." (House Aff. ¶ 13.) In the court's view this satisfies the first prong of the apparent authority test: Diamond directly indicated

that Premier, and Owen in particular, would be acting in its stead. If that were not enough to also create reasonable reliance, it is reinforced by Premier employees (including Owen) holding themselves out as Diamond representatives (presumably with authorization to do so). When meeting with House, they "wore shirts and hats bearing Diamond logos and often used the pronoun 'we' when discussing Diamond's offerings and positions." (*Id.* at ¶ 14.) All these events happened in the first half of 2007, before any of the Kentucky-directed communications occurred, and thus could reasonably have created the impression that Owen's actions were undertaken as Diamond's agent. The court therefore concludes that Owen acted with apparent authority and was legally Diamond's agent when he made the representations in question to a potential customer in Kentucky. Diamond thus purposefully availed itself of the privilege of doing business here. The first prong of the *Southern Machine* test is met.

The second element "is satisfied 'when the operative facts of the controversy arise from the defendant's contacts with the state.'" *Intera Corp. v. Henderson*, 428 F.3d 605, 617 (6th Cir. 2005) (*quoting Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000)). The standard is a lenient one; the cause of action need not "formally" arise from the defendant's contacts. *Air Prods.*, 503 F.3d at 553. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract." *S. Mach. Co.*, 401 F.2d at 384 n.29 (*quoted in Calphalon*, 228 F.3d at 723-24). As explained above this case arises at least in part as a result of Owen's alleged representations to House, which he made in (and/or directed to) Kentucky. This requirement is met.

Where the first two elements of the *Southern Machine* test are met, the court can typically infer that the exercise of jurisdiction would be reasonable. *See Aristech Chem. Int'l v. Acrylic*

*Fabricators*, 138 F.3d 624, 628 (6th Cir. 1998); *CompuServe*, 89 F.3d at 1268; *S. Mach. Co.*, 401 F.2d at 384. Determining reasonableness in a given case is a matter of balancing four factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; and (4) the interests of other States in securing the most efficient resolution of the controversy. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987); *Compuserve*, 89 F.3d at 1268.

The Supreme Court has instructed us that "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at 114. At the same time, however, the Court recognized that those burdens are "unique," and that they carry "significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* In the circumstances of this case, we do not think that the burdens on Diamond would be undue. While it has not set up shop in Kentucky, it does employ a distributor and a certified repair center servicing the state, and allegedly directed that fraudulent statements be made to a Kentucky resident in order to entice him to buy its products. The fact that Diamond does business in Kentucky and surrounding states (through its contracts with distributors and repair centers) militates against the idea that subjecting it to jurisdiction here would be unfair. *See Tobin v. Astra Pharmaceutical Prods., Inc.*, 993 F.2d 528, 545 (6th Cir. 1993) (while defendant's familiarity with American administrative and legal processes did not lessen the burden of litigation, it did "indicate that [defendant] will not be lost in our complex legal system and shows a willingness by [defendant] to expend substantial resources to exploit the United States market").

The remaining factors do not convince us that taking jurisdiction would be unreasonable. Kentucky, as Diamond concedes, has an interest in this case, because one of its citizens (Morris)

alleges that it was injured by a Diamond-related transaction. And Morris has an interest in litigating its case at home, rather than being forced to travel to Canada or elsewhere to seek relief. By way of contrast, when the *Asahi* Court found jurisdiction unreasonable, the only claim before it was for indemnification involving a transaction that occurred in Taiwan between a Taiwanese buyer and a Japanese seller. 480 U.S. at 115. There was virtually no connection to California, and the plaintiff could not show that convenience favored keeping the case there. The case before us is not nearly so extreme. The court is of the opinion that asserting personal jurisdiction over Diamond on the basis of its communications into Kentucky would not be unreasonable. We thus conclude that we have personal jurisdiction over Diamond with respect to Morris's claims.

**2**

We turn now to Mascaro, and quickly reject the notion that we have specific personal jurisdiction over its claims against Diamond. Personal jurisdiction must be established with respect to each cause of action. *See* 4A Wright & Miller, *supra*, at § 1069.7, at 226. There is however no allegation or argument that Mascaro purchased its plane in Kentucky or that it received any allegedly tortious communications in the Commonwealth. The section of the Response dealing with Mascaro's purchase makes no mention of Kentucky; all the events appear to take place in Florida. (*See* Resp. 7-8.) Indeed there is no mention of the name "Mascaro" anyplace in the plaintiffs' discussion of personal jurisdiction. (*See id.* at 9-20.) Joseph Mascaro's affidavit says not a word about Kentucky. Nothing whatsoever appears to connect the actions involving Mascaro to this state, and absent some such connection the court lacks original specific jurisdiction over its claims.

If we are to entertain Mascaro's claims it must therefore be on the basis of "pendent personal jurisdiction." The Sixth Circuit has apparently never addressed this doctrine in a controlling opinion,

but Judge Rogers has offered a concise and (in this court's view) accurate summation of the prevailing law in a partial dissent. *SunCoke Energy Inc. v. Man Ferrostaal Aktiengesellschaft*, 563 F.3d 211, 221 (6th Cir. 2009) (Rogers, J., dissenting). *See also Jude v. First Nat'l Bank*, 259 F. Supp. 2d 586, 596-597 (E.D. Ky. 2003) (applying pendent personal jurisdiction); 4A Wright & Miller, *supra*, at § 1069.7. The doctrine exists to preserve judicial efficiency and to avoid piecemeal litigation, and the district courts have discretion in deciding whether or not to invoke it. *See SunCoke*, 563 F.3d at 221 (Rogers, J., dissenting) (*citing Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 5 (D.C. Cir. 1977)); 4A Wright & Miller, *supra*, at § 1069.7, at 236. Before that discretion ever arises, however, the claim over which pendent jurisdiction is asserted must share a "common nucleus of operative fact" with some claim over which personal jurisdiction is otherwise proper. *SunCoke*, 563 F.3d at 221 (Rogers, J., dissenting) (*citing United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002)); 4A Wright & Miller, *supra*, at § 1069.7, at 236. There is no such nucleus here. The actions that allegedly harmed Mascaro arose out of a wholly separate set of statements or omissions, made to different people, from those that allegedly harmed Morris. There is no allegation that the companies negotiated together; indeed much of Morris's negotiation took place after Mascaro had already consummated its purchase. Without a common nucleus there is no basis for subjecting Diamond to personal jurisdiction in Kentucky with respect to Mascaro's claims. They will therefore be dismissed without prejudice so that they may be re-filed in a court that can properly adjudicate the dispute.

## II

Having disposed of Mascaro, we turn to the merits of Morris's case. Diamond has moved to dismiss them for failure to state a cognizable claim for relief. "In determining whether to grant a

Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (*quoting Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)). The affidavits and other evidence attached to the briefing on the motions before the court are therefore "not to be considered" in this context. *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997) (*citing Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). Were we not to exclude them from our assessment of the motion Rule 12(d) would require us to treat the motion as one for summary judgment, which is plainly premature. So for present purposes we will ignore the affidavits and focus only on the complaint itself.

Under the Supreme Court's recent decision in *Ashcroft v. Iqbal,* a complaint "only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (*quoting Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). This raises the bar from where *Conley v. Gibson*, 355 U.S. 41 (1957) had left it: whereas under *Conley* a court was to dismiss a facially well-pleaded complaint only if its contents were so outlandish as to be utterly incapable of proof, *Iqbal* (together with its predecessor, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) advises us to toss out a case unless the allegations meet some minimum standard of plausibility. *Courie*, 577 U.S. at 629-30. While we must take the complaint's factual allegations as true in making this assessment, we need not accept the truth of legal conclusions or draw unwarranted factual inferences. *DirectTV, Inc. v. Treesh*, 487 F.3d 271, 476 (6th Cir. 2007); *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

A claim of fraud or mistake creates a "high risk of abusive litigation," *Twombly*, 550 U.S. at 569 n.14, and therefore must satisfy a still more stringent pleading standard under Fed. R. Civ. P. 9(b). At a minimum, the complaint must (1) specify the allegedly fraudulent statements, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Ind. State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 943 (6th Cir. 2009); *Frank v. Dana*, 547 F.3d 564, 570 (6th Cir. 2008). With these standards in mind, we turn to the allegations of the amended complaint.

## A

Count I alleges fraudulent and negligent misrepresentation. Common-law fraud in Kentucky requires proof of six elements: (1) that the declarant (the defendant or its agent) made a material representation to the plaintiff; (2) that this representation was false; (3) that the declarant knew the representation was false or made it with reckless disregard for its truth or falsity; (4) that the declarant intended to induce the plaintiff to act upon the misrepresentation; (5) that the plaintiff reasonably relied upon the misrepresentation; and (6) that the misrepresentation caused injury to the plaintiff. *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (citations omitted). The representation in question "must relate to a past or present material fact." *Id.* Predictions and statements of opinion generally cannot form the basis of a fraud claim; "forward-looking recommendations and opinions are not actionable . . . merely because they are misguided, imprudent or overly optimistic." *Id.* (*quoting In re Salomon Analyst AT&T Litig.*, 350 F.Supp.2d 455, 467 (S.D.N.Y. 2004)). Morris's amended complaint does not meet these requirements.

There are four paragraphs that might be thought to allege a fraudulent representation. Paragraph 12 alleges that, "[d]uring purchase negotiations, Diamond made representations to

Plaintiffs regarding the length and reliability of the TAE engine warranty." This sentence indicates two separate statements: as to the length of the warranty, and as to its reliability. With respect to the warranty's duration, Diamond could not have known that the former representation would turn out to be false, because TAE's warranties were not cut short until the April 2008 insolvency proceeding. So the statement as to the length of the warranty cannot form the basis of a fraud claim.

The representation regarding reliability is simply not, without more, a statement of fact. To say that "TAE's warranty is reliable" is not to offer an objective data point; it is a subjective assessment of many data points in accordance with the speaker's tolerance for risk and uncertainty. An allegation that Diamond had provided Morris with false or misleading financial data regarding TAE, or that Diamond had told Morris that there was no reason to think the warranty might be voided, would have amounted to a statement of fact. The allegation in Paragraph 12 does not. Similarly, Paragraph 13 alleges that "Diamond endorsed TAE as a reliable and quality company," and Paragraph 24 alleges that "Diamond falsely represented to Plaintiffs the quality and reliability of TAE, the TAE engine, and TAE's engine warranty." These assertions all suffer from the same flaws—"quality" and "reliable" are not statements of fact, but of opinion—and fail to state any actionable representation of fact.

Paragraph 14 states that "Diamond prepared and supplied Morris with a written . . . 'Break-even Analysis,'[] which indicated that the TAE engines would not require an overhaul until they reached at least 2,400 operating hours." Here finally is an actionable allegation of a factual representation, but Morris has failed to allege that it is false. Nothing in the amended complaint indicates that an engine overhaul has been or will be necessary before the 2,400-hour threshold is reached. Absent an allegation that a statement was false it cannot form the basis of a fraud claim.

Count 1 thus fails to allege a cognizable case of fraudulent misrepresentation. It must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**B**

Kentucky follows the Restatement (Second) of Torts § 552 in providing a distinct cause of action for negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580 (Ky. 2004); Restatement (Second) of Torts § 552(1). Diamond had a pecuniary interest (if perhaps an indirect one) in Morris buying one of its planes. As to the requirement that the defendant have provided false information, this tort is importantly different from an allegation of fraud: while the "false information" must be an affirmative false statement (and not a mere omission), *Associated Warehousing, Inc. v. Banterra Corp.*, 2009 U.S. Dist. LEXIS 54614 (W.D. Ky. June 24, 2009), it is not limited to representations of fact. The rule "applies not only to information given as to the existence of facts but also to an opinion given upon facts equally well known to both the supplier and the recipient." Restatement (Second) of Torts § 552 cmt. b. So statements about the "quality" and "reliability" of TAE may be actionable, if Diamond failed to exercise reasonable care in making the statements and Morris justifiably relied on them to its detriment. The complaint alleges that Diamond "knew or should have known" about the investigations targeting TAE and the likelihood of financial distress. (Am. Compl. ¶ 18.) If proven that may be enough to make out failure to exercise reasonable care. And there is so far nothing to indicate that Morris knew or should have known about TAE's financial woes, so it

may well have been justified in relying on Diamond's representations. Accordingly, Rule 12(b)(6) dismissal of the negligent misrepresentation claim is inappropriate at this stage.

There is also however the question whether the amended complaint meets Rule 9(b)'s pleading standard. Negligent misrepresentation claims are subject to its strictures, at least where (as here) the plaintiffs have alleged that the defendant "knew or should have known about" the misrepresented facts. *See Anderson v. Merck & Co.*, 417 F. Supp. 2d 842, 848 n.6 (E.D. Ky. 2006). *Cf. Minger v. Green*, 239 F.3d 793 (6th Cir. 2001) ("negligent misrepresentation" claim treated as one for intentional misrepresentation where "look[ing] beyond labels to the facts alleged in the complaint" reveals that the latter is in fact the complaint's basis). As discussed above, Rule 9(b) requires that the complaint specify the statements in question, identify the speaker, and state where and when the statements were made. The amended complaint fails to do so. There is for instance no specification of the speaker, or in the case of written materials the person who sent or provided the false statements. (Recall that because the question we here address is restricted to the pleadings we cannot reference the House affidavit.) Nor does the amended complaint specify where any of the statements were made, or when (except inasmuch as "during purchase negotiations" specifies a time—which is to say not much). It thus fails to meet Rule 9(b)'s particularity requirements. Accordingly the court will dismiss the negligent misrepresentation claim without prejudice.

## C

The next allegation is "fraudulent concealment," although in Kentucky the tort alleged is more commonly known as fraud by omission. It requires proof of four elements: (1) that the defendant had a duty to disclose a material fact, (2) that it failed to disclose the fact in question, (3) that its failure to disclose induced the plaintiff to act, and (4) that the plaintiff suffered actual

damages. *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003) (*citing Smith v. Gen. Motors Corp.*, 979 S.W.2d 127, 129 (Ky. Ct. App. 1998)). Diamond argues that the plaintiffs have insufficiently alleged that it was under a duty to disclose information regarding TAE's financial problems. Such a duty may arise in several situations, only two of which are relevant here. First, "where one party to a contract has superior knowledge and is relied upon to disclose same." *Smith*, 979 S.W.2d at 129. Alternately, a "partial disclosure by a party in a transaction puts that party under a duty to tell everything once he/she discloses some information on the matter in question." *Mercy Health Partners-Lourdes, Inc. v. Hastings*, 2006 U.S. Dist. LEXIS 47743, at *11 (W.D. Ky. June 29, 2006) (*citing Dennis v. Thomson*, 43 S.W.2d 18, 23 (Ky. 1931)). Both of these duties attach only to parties to the contract about which fraud is claimed, but so far as the court can tell Diamond was not a party to any contract with Morris. Morris bought its plane from Premier, and the complaint admits as much. (*See* Am. Compl. at ¶¶ 10-11. *See also* Def.'s Ex. 1 (FAA documents indicating that Premier was the registered owner and seller of the vehicles purchased by Morris).)

While it is true that the court decided above that there is prima facie evidence (for purposes of determining personal jurisdiction) that Jeff Owen and Premier had apparent authority to make certain statements on Diamond's behalf, there is a vital distinction between that situation and Diamond being an actual de jure party to a contract. The latter, formalized relationship is required for a finding of duty. Anyway the existence of apparent authority was premised on affidavit testimony that the court cannot consider in this context.

Not being a party to any contract between Premier and Morris, Diamond cannot have had a duty to disclose information related thereto. *Cf. Gresh v. Waste Servs. of Am.*, 311 Fed. Appx. 766,

772 (6th Cir. 2009) (unpublished) (collecting cases finding a duty to disclose, all of which involve parties to a contract). The fraud-by-omission claim therefore fails.

### D

Count IV alleges that Diamond violated the Kentucky Consumer Protection Act (KCPA), KRS 367.110, et seq., in the course of selling Morris its plane. Specifically, KRS 367.170 declares it unlawful to engage in "[u]nfair, false, misleading or deceptive acts or practices in the conduct of any trade or commerce"; KRS 367.220 provides a private cause of action to individuals harmed by such practices. That cause of action, however, is available only to persons who have purchased or leased "goods or services primarily for personal, family or household purposes." KRS 367.220(1). The complaint makes no allegation to this effect, and indeed the FAA documents provided by the defense contain an agreement to lease the aircraft in question to YourJet (which as the plaintiffs' Response admits was a commercial air taxi business). Morris cannot maintain a KCPA claim.

### III

Diamond's last argument for dismissal is that the economic loss rule bars Morris from recovery. That doctrine "precludes a plaintiff from recovering under a fraud theory when that claim is intertwined with a breach of contract claim." *Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 955, 968 (W.D. Ky. 2007). There is however no breach of contract claim in this case; indeed there was no contract between the parties that could have been breached. The economic loss rule has no application.

### IV

Finally, the plaintiffs have moved to consolidate this case with a similar one recently filed and assigned to the undersigned, *DSM Leasing, Inc. v. Diamond Aircraft Industries, Inc.*, No. 3:10-

CV-229-S. That case involves eighteen separate defendants, none of whom has any obvious connection to Kentucky. Jurisdiction over Diamond in that case appears to be premised on the continuous and systematic contacts that we have just determined not to exist. Rather than address the motion to consolidate at this juncture, we think it better to defer consideration until after the apparently inevitable motion to dismiss in that case, so that the cases (should we decide to consolidate) will be at the same stage of the litigation process.

## V

For the foregoing reasons, the amended complaint will be dismissed in its entirety. A separate order will effectuate these decisions.