UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MORRIS AVIATION, LLC                                                                          PLAINTIFF

v.                                                                    CIVIL ACTION NO. 3:09-cv-644-S

DIAMOND AIRCRAFT
INDUSTRIES, INC.                                                                             DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on motion (DN 77) of the plaintiff, Morris Aviation, LLC ("Plaintiff"), to alter, amend, or vacate this court's previous memorandum opinions and orders entered on July 26, 2010 (DN 39) and November 23, 2011 (DN 73). For the reasons set forth below, the motion will be denied.

This matter arose out of the sale of a DA42 aircraft which was manufactured by the defendant, Diamond Aircraft Industries, Inc. ("Defendant"). The planes were designed for and sold with engines manufactured by a German firm, Thielert Aircraft Engines G.m.b.H. ("TAE"). The TAE engines came with a significant warranty and Defendant's warranty expressly excluded the TEA engines included in its plane. In March of 2008, Plaintiff purchased its plane from Premier Aircraft Sales, Inc., an authorized distributor of Defendant. In April of 2008, TAE fell into a German insolvency proceeding and all of its warranties were declared void. Plaintiff asserted that Defendant misled it about the state of TAE's finances and the likelihood that TAE's engine warranties would become worthless.

Plaintiff filed this action against Defendant alleging fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation. (DN 1). Plaintiff then filed a First Amended Complaint with Jury Demand. (DN 9). Defendant filed a Motion to Dismiss the First Amended Complaint (DN 14), alleging that Plaintiff's First Amended Complaint failed to state a claim and that Plaintiff could not establish the elements for the causes of action. In our order dated July 26, 2010, we granted Defendant's Motion to Dismiss, dismissing Plaintiff's fraud claims with prejudice and the negligent misrepresentation claim without prejudice. (DN 38). Plaintiff then filed a Motion for Leave to File a Second Amended Complaint (DN 41), which we granted. Subsequently, Plaintiff filed a Second Amended Complaint (DN 41-2) reasserting its negligent misrepresentation claim.

Defendant later filed a Motion for Relief from Order and Incorporated Memorandum of Law ("Motion for Relief"), which asserted that intervening changes in Kentucky law relating to the application of the economic loss rule to negligent misrepresentation claims warranted dismissal of Plaintiff's negligent misrepresentation claim. (DN 56). In our order dated November 23, 2011, we granted Defendant's Motion for Relief and dismissed Plaintiff's negligent misrepresentation claim with prejudice. (DN 73).

Plaintiff now argues that we should alter, amend or vacate our previous rulings dismissing Plaintiff's claims. (DN 77). Motions to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e) are "extraordinary" in nature and should be "sparingly granted." *Buckner v. Kentucky*, 2011 WL 1304747, at *1, 2011 U.S. Dist. LEXIS 36956 (E.D. Ky. April 5, 2011) (citing *Marshall v. Johnson*, 2007 WL 1175046, 2007 U.S. Dist. LEXIS 29881, at *2 (W.D. Ky. Apr. 19, 2007)). The court may grant a Rule 59(e) motion only in limited circumstances: if there is (1) a clear error of law; (2) newly-discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent

manifest injustice. *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). Rule 59(e) does not provide parties a forum to present new arguments or theories that, with proper diligence, could have been asserted prior to the judgment being issued. *See Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008); *Gen Corp*, 178 F.3d at 834. The rule is also not a vehicle to "re-hash old arguments" in an attempt to gain a different result. *Browning v. Pennerton*, 2008 WL 47911491, at *1, 2008 U.S. Dist. LEXIS 90107 (E.D. Ky. Oct. 24, 2008).

Plaintiff asserts that pursuant to Rule 59(e), two grounds exist for the Court to reconsider its previous rulings, namely that there was a manifest error of law and that new evidence is available which warrants alteration or amendment. Specifically, Plaintiff argues that (1) we adopted an unnecessarily broad interpretation of Kentucky case law in our November 23, 2011 Order which held Plaintiff's negligent misrepresentation claim was barred by the economic loss rule; (2) newly discovered evidence obtained after our July 26, 2010 Order supports Plaintiff's fraudulent misrepresentation claim; and (3) contrary to our previous holding in our July 26, 2010 Order, fraudulent concealment does not require privity between Plaintiff and Defendant. (DN 77-1).

First, we address Plaintiff's argument that our November 23, 2011 Order adopted an unnecessarily broad interpretation of Kentucky case law as it applied the economic loss rule to negligent misrepresentation claims. In our November 23, 2011 ruling, we held that the Kentucky Supreme Court opinion of *Giddings & Lewis, Inc. v. Industrial Risk Insurers, et al.*, 348 S.W.3d 729 (Ky. 2011), established that the economic loss rule as it was adopted in Kentucky barred Plaintiff from recovering under a negligent misrepresentation theory. (DN 72). We previously held in our

July 26, 2010 Order that the economic loss rule did not apply because Plaintiff and Defendant were not in contractual privity. (DN 39).

In *Giddings*, the Kentucky Supreme Court held that "the [economic loss] rule's application is not limited to negligence and strict liability but also encompasses negligent misrepresentation claims." 348 S.W.3d at 746. The Court further explained its reasoning by stating:

> While Section 9 of the Restatement (Third) of Torts now specifically provides for a negligent misrepresentation claim in the context of a sale of a defective product, significantly, the Restatement adheres to the approach we adopt today–the tort claim is for recovery of damages to persons or property, not damages to the product itself or other forms of economic loss.

*Id*. The parties in *Giddings* were in contractual privity, but in reaching its decision, the *Giddings* Court adopted the United States Supreme Court opinion, *East River Steamship Corp. v. Transamerica Delaval, Inc*., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

In *East River Steamship*, the parties were not in direct contractual privity, but both parties had contracted with the same third party. *Id*. at 871. The Court held that the manufacturer defendant had "no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id*. The Court reasoned that when the commercial user stands to lose only the value of their product or "experiences increased costs in performing a service." "[l]osses like these can be insured" and should not be dealt with in tort law. *Id*. The Kentucky Supreme Court echoed this rationale by stating "the [economic loss] rule precludes recovery in tort for repair costs, lost profits and other items that essentially equate with the failure of the purchaser to receive the benefit of its bargain–traditionally the core concern of contract law." *Giddings*, 348 S.W.3d at 733 (quoting *East River Steamship*, 476 U.S. at 870). The Court further stated:

> We adopt the *East River Steamship* Court's holding that "a manufacturer in a commercial relationship has no duty under either a negligence or a strict products-

- 4 -

> liability theory to prevent a product from injuring itself." 476 U.S. at 871, 106 S.Ct. 2295. This rule recognizes that economic losses, in essence, deprive the purchaser of the benefit of his bargain and that such losses are best addressed by the parties' contract and relevant provisions of Article 2 of the Uniform Commercial Code. *See* Kentucky Revised States (KRS) 355.2-101 *et seq*. Like the United States Supreme Court, we believe the parties' allocation of risk by contract should control without disturbance by the courts via product liability theories borne of a public policy interest in protecting people and their property from a dangerous product. *Id*. at 867, 106 S.Ct. 2295. Thus, costs for repair or replacement of the product itself, lost profits and similar economic losses cannot be recovered pursuant to negligence or strict liability theories. . .

*Id*. at 738.

Thus, we held in our November 23, 2011 Order that Plaintiff's negligent misrepresentation claim was barred by the economic loss rule, because Plaintiff only sought recovery for the future expected repair costs that would have been covered under the TAE engine warranty. Because these were purely economic losses related to the repair of the product itself, we found the negligent misrepresentation claim was barred by the economic loss rule. Plaintiffs now argues that this interpretation of Kentucky case law was unnecessarily broad because *Giddings* only dealt with two parties in direct contractual privity and in this case, Plaintiff and Defendant were not in contractual privity.

As we previously stated in our November 23, 2011 Opinion, although *Giddings* involved two parties in contractual privity with one another, the Court adopted the holding of *East River Steamship*, where the United States Supreme Court applied the economic loss rule to a negligent misrepresentation claim between parties who were not in contractual privity. We see no reason why the Kentucky Supreme Court would hold differently if it were faced with a factual scenario, such as the case at hand, which is more analogous to the *East River Steamship* opinion which it adopted.

Plaintiff offers no new authority establishing that our previous dismissal of the negligent misrepresentation claim was a "manifest error of law" under Rule 59(e).  Instead, Plaintiff appears to rehash arguments that Plaintiff previously made and we already considered in our prior ruling.  We therefore find no reason to alter or amend our November 23, 2011 Order and Plaintiff's motion will be denied as to our holding on its negligent misrepresentation claim.

Second, Plaintiff also argues that the July 26, 2010 Order should be amended, altered or vacated because new evidence has been obtained since this court's order was entered.  Specifically, Plaintiff argues that evidence in the form of recovered emails from Defendant and deposition testimony, shows that Defendant was aware of the impending bankruptcy of TAE before TAE's bankruptcy was declared.  We stated in our July 26, 2010 Opinion that as of the purchase of Plaintiff's aircraft, which occurred in March of 2008, "Diamond could not have known that the former representation would turn out to be false, because TAE's warranties were not cut short until the April 2008 insolvency proceedings."  (DN 16).

Defendant argues that it is improper for us to now consider evidence outside of the pleadings because our July 26, 2010 Order was on a Fed. R. Civ. P. 12(b)(6) motion stating that the Plaintiff failed to state a claim based on its allegations.  Even if we were to consider Plaintiff's "new evidence" under Rule 60(b), we do not find that our prior ruling should be altered or amended.  Plaintiff cites to an email sent several months before Plaintiff's purchase and before TAE entered insolvency proceedings.  The email was sent by Defendant's President, Peter Maurer ("Maurer") and stated:

> Wow, good news on the TAE stock – he'll be bankrupt soon!  Oh wait, we aren't finished with our engine – what will we do now?  Quick get the DA42 Lycoming certified....or maybe we will take over TAE – but then we have to carry his warranty

> obligations – what do we do now? Oh, well – main thing is that Thielert is dying. Might kill us too, but we WIN!

(DN 76). Plaintiff argues that this email shows that Defendant "was fully apprised of TAE's financial difficulties" and that Defendant "knew the risks associated with the warranty obligations of TAE." (DN 77-1). Even considering this email in the most favorable light to Plaintiff, it is purely speculative and based on publicly disclosed financial stock information. Further, Plaintiff also filed Maurer's deposition in the record, where Maurer explained that his email was sarcastic and that he was "not an expert in public companies, but at that point that's the stock value. So it would be of concern to the investors at [TAE], the people that had purchased the stock, but it wouldn't necessarily affect the ability of the company to operate." (DN 76 at 91:17-92:7).

As we set forth in our July 26, 2010 Opinion, a fraudulent misrepresentation claim in Kentucky requires proof of six elements: (1) that the declarant (the defendant or its agent) made a material representation to the plaintiff; (2) that this representation was false; (3) that the declarant knew the representation was false or made it with reckless disregard for its truth or falsity; (4) that the declarant intended to induce the plaintiff to act upon the misrepresentation; (5) that the plaintiff reasonably relied upon the misrepresentation; and (6) that the misrepresentation caused injury to the plaintiff. *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009). The representation that forms the basis of the claim "must relate to a past or present material fact." *Id*. Predictions and statements of opinion generally cannot form the basis of a fraud claim, as "forward-looking recommendations and opinions are not actionable ... merely because they are misguided, imprudent or overly optimistic." *Id*. (quoting *In re Salomon Analyst AT&T Litig.*, 350 F.Supp.2d 455, 467 (S.D.N.Y. 2004)).

Thus, as we held before, any predictive representations made to Plaintiff in regards to the length or reliability of TAE's engine warranties cannot form the basis for a fraudulent misrepresentation claim under Kentucky law. The TAE engine warranties were not cut short until the insolvency proceeding in April of 2008, which was after the purchase of Plaintiff's aircraft. At best, Plaintiff's "new evidence" establishes that Defendant may have had some knowledge that TAE was having financial difficulties and the warranties may be risky. This does not translate to certain knowledge of TAE going bankrupt or TAE's engine warranties being voided, and appears to be based on public stock exchange information. This is also the exact type of representation that the Kentucky Supreme Court has held cannot form the basis of a fraudulent misrepresentation claim because it is the type of "forward-looking recommendations and opinions [that] are not actionable ... merely because they are misguided, imprudent or overly optimistic." *Id*. Therefore, we conclude that Plaintiff's motion to alter or amend our July 26, 2010 Order regarding Plaintiff's fraudulent misrepresentation claim will be denied.

Last, Plaintiff argues that in our July 26, 2010, we made a "manifest error of law" in dismissing Plaintiff's fraudulent concealment claim (i.e. fraud by omission). Plaintiff argues that it was error for us to hold that Defendant did not have a duty to disclose TAE's financial problems to Plaintiff, because Defendant "was not a party to any contract with [Plainitff]." (DN 77). Plaintiff appears to misconstrue our holding as requiring privity between the parties in order to maintain a claim for fraudulent concealment.

Under Kentucky law, a claim for fraud by omission requires that the plaintiff show: (1) the defendant had a duty to disclose a material fact; (2) the defendant failed to disclose that material fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the

plaintiff suffered damages. *Mercy Health Partners-Lourdes, Inc. v. Hastings*, 2006 WL 1867453, *4, 2006 U.S. Dist. LEXIS 47743 (June 29, 2006) (citing *Dennis v. Thomson*, 43 S.W.2d 18, 23 (Ky. 1931)).

As we discussed in our July 26, 2010 Opinion, Kentucky law provides four circumstances which may give rise to a duty owed: (1) a fiduciary relationship; (2) a duty imposed by statute; (3) a partial disclosure of information by a party in a transaction, making what was said and left unsaid materially misleading; or (4) particular circumstances, "such as where one party to a contract has superior knowledge and is relied upon to disclose same." *See Gresh v. Waste Servs. of America, Inc.*, 311 Fed. App'x 766, 772 (6th Cir. 2009); *Smith v. Gen Motors Corp.*, 979 S.W.2d 127, 129 (Ky. Ct. App. 1998). In this case, there is no assertion that a duty to disclose information existed pursuant to a statute or any fiduciary relationship between the parties. Thus, we stated that "only two" of those four circumstances "are relevant here," namely (3) a partial disclosure of information and (4) superior knowledge. (DN 38). In reviewing Kentucky case law, we concluded that Defendant did not owe Plaintiff a duty to disclose under either of these circumstances, because Defendant and Plaintiff were not parties to a contract or a transaction. (DN 38). We did not hold that privity of contract was required for a fraudulent concealment claim, as Plaintiff argues. Instead, we held that in the relevant circumstances for a duty to arise in this case, no duty existed because Plaintiff and Defendant were not parties to a contract.

In *Gresh*, the United States Court of Appeals for the Sixth Circuit reviewed a case where the only relevant circumstances that could create a duty to disclose information were (3) a partial disclosure of information between parties to a transaction and (4) superior knowledge. 311 Fed. Appx. at 772. The Court stated that "[i]n particular circumstances, the Kentucky courts have

recognized that a *seller* may be obligated to disclose known risks or defects that a reasonable *buyer* would want to know and that he could not discover through ordinary diligence." *Id*. (emphasis added). The Court then reviewed several Kentucky cases, all involving parties to a contract. *Id.* (citing *Smith*, 979 S.W.2d at 129; *Faulkner Drilling Co., Inc. v. Gross*, 943 S.W.2d 634, 638 (Ky. App. 1997); *Bryant v. Troutman*, 287 S.W.2d 918, 921 (Ky. 1956)). The Court further stated that "the failure to disclose also must be so shocking to the ethical sense of the community, and ... so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is unaware." *Id*. (quoting RESTATEMENT (SECOND) OF TORTS § 55 cmt. I).

Plaintiff and Defendant were not directly involved in a contractual relationship where a "seller may be obligated to disclose known risks or defects that a reasonable buyer would want to know or could not discover through ordinary diligence." *Id*. Further, even if we take Plaintiff's allegations as true or considered Plaintiff's "new evidence" in the light most favorable to Plaintiff, at best, Defendant knew that TAE was struggling financially. Defendant could not have possessed certain knowledge that TAE would enter insolvency and the warranties would be voided, such that a duty to disclose would arise. Further, the statements by Defendant's President appear to be based on publicly available stock information, which Plaintiff certainly could have obtained through due diligence. Reviewing all the pleadings and our previous memorandum opinions and orders, we find that Plaintiff's motion to alter, amend or vacate our holding as to its fraudulent concealment claim should be denied.

An order consistent with this opinion will be entered this date.

August 24, 2012

Charles R. Simpson III, Judge
United States District Court